**BOYLE, Treas., Plaintiff-Appellant, v. PUBLIC ADJUSTMENT COMPANY et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21725.   Decided April 10, 1950.

Frank T. Cullitan, Pros. Atty., John F. Smolka, Asst. Pros. Atty., Cleveland, for plaintiff-appellant.

Wm. H. Rosenfeld, Alfred Palay, Cleveland, for defendants-appellees.

(ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, of First District, sitting by designation.)

**OPINION**

By MATTHEWS, J.:

The question presented on this appeal arose in an action to foreclose a tax lien. The tax had been levied against a large tract of land. After the tax had been levied and had become delinquent, but before this foreclosure action was filed, the owner transferred two portions so that at the time of the foreclosure portions of the entire tract were owned by three different persons, all of whom were made parties to the action.

After a decree in foreclosure of the lien on the entire tract had been entered, an order of sale issued and returned showing no sale for want of a bidder, the original owner of the entire tract who still owned a portion and the transferees of portions, each filed applications in which they represented that they owned portions of the tract, that, in accordance with law, each had entered into an agreement or undertaking with the county treasurer whereby the taxes on their respective portions were paid under the terms of the Whittemore Act, and that all the costs of the pending action had been paid. They also represented that no delinquency existed against the respective tracts and that the plaintiff had erroneously included those portions in the order of sale. They asked that the order of sale be vacated and that the Court find that no delinquency existed as to those portions and that the taxes were being paid in accordance with the terms of the Whittemore Act. By order entered on the journal on May 4th, 1946, these applications were overruled. The defendants appealed from this order and it was affirmed by the Court of Appeals and by the Supreme Court, **148 Oh St 559.**

Before making the entry on the journal of May 4th, 1946, Judge Orr, to whom the applications had been submitted, handed down a memorandum opinion in which he discussed the applicability of §2672-15 GC, and reached the conclusion that it did not apply and as already noted denied the applications. He closed this memorandum opinion with this statement: "Since the County Treasurer has accepted funds of the applicants under the mistaken belief that he could do so, we believe it is within the power of this Court to order the return to the applicants of such funds and an order to this effect may be accordingly prepared."

No such provision was incorporated in the journal entry denying the application and no separate order directing repayment was made at the time. However, on November 15th, 1949, after the Supreme Court had affirmed the order denying the applications, the applicants presented to Judge Kramer, the presiding judge of the Court at the time, a journal entry which he signed and ordered entered over the objection of the plaintiff. This journal entry is as follows:

"This matter came on to be heard this 15th day of November, 1949, upon the application of the defendants, The Public Adjustment and Construction Company, and Alex N. Sill.

"The Court being apprised that the Hon. Stanley L. Orr, the Trial Judge who heard the application of these defendants herein, has since died and that prior to his death he had prepared a written memorandum of his decision herein; that in said written memorandum said Trial Judge found that the County Treasurer, the plaintiff herein, had accepted funds of these applicants under the mistaken belief that he could do so and that the said funds should be returned to these applicants, and this Court being further apprised that said Trial Judge stated in said decision that an order may be prepared accordingly and that no such order was submitted to said Trial Judge prior to his decease, this Court finds that an order should be entered upon the Journal of this Court in accordance with such written memorandum of said Trial Judge.

"IT IS THEREFORE ORDERED that Leslie R. Monroe, as successor County Treasurer, refund to the defendant, The Public Adjustment and Construction Company, the sum of Four Hundred Fifty-Nine Dollars and Fifty-Eight Cents. ($459 58) received by the County Treasurer of Cuyahoga County under and pursuant to Undertaking No. 91187 and the sum of Four Hundred Eleven Dollars and Sixty-Three Cents ($411.63) received under Undertaking No. 91189, and to the defendant, Alex M. Sill, the sum of One Hundred Ten Dollars and Fifty-Six Cents ($110.56) received under Undertaking No. 91188."

It is from that order that this appeal was taken.

Counsel have discussed and cited cases illustrating the distinction between a pronouncement, oral or written, by a judge other than upon the journal of the Court, and the same pronouncement when entered upon the journal. We had occasion to consider this difference in **State, ex rel. Ruth v. Hoffman, Judge, 82 Oh Ap, 266, 80 N. E. (2d.) 235, 4 A. L. R. (2d.)**

579. It seems to us that counsel are in agreement as to the legal effect of the distinction.

That a pronouncement by a judge of a court is not effective as an action by the Court until journalized is beyond dispute. Until journalized it remains the action of the judge and whatever legal effect is accorded results from the fact that it was done by the judge in the discharge of his judicial duties.

When the pronouncement declares an intent to enter an order upon the court journal, it becomes the duty of the judge to make his pronouncement effective by journalization, unless in the exercise of a sound judicial discretion such intent is altered by him. While his discretion as to his decision cannot be controlled, so long as that decision remains unaltered, he can be required by the writ of mandamus to perform the ministerial duty of doing whatever the law requires of him to have such decision spread upon the journal of the court.

It is not necessary in this case to consider whether, or under what circumstances a successor judge can be compelled to direct the journalization of a decision announced by a deceased predecessor. That was the precise question presented in State, ex rel. Ruth v. Hoffman, supra. In the case at bar, the judge upon whom devolved the duty of deciding whether such decision should be spread upon the journal has decided that issue in the affirmative.

We think it clear that after the journalization of a decision has been made by a successor judge, its legal effect can be no greater than it would have been had it been journalized by the pronouncing judge in his lifetime. This is clearly so in this instance, because Judge Kramer expressly limited his act to the journalization of the decision already made by Judge Orr. Whatever judicial function which was involved had been performed by Judge Orr, and it was his decision, not Judge Kramer's that was journalized. There still remains the right to question the validity of such order and the fact that the successor judge made the journal speak as of a prior date does not affect the time within which the decision may be reviewed. We come then to a consideration of the validity of the order.

The question is whether Judge Orr should have made the order?

It is now claimed that the money was paid by the defendants to the plaintiff under such circumstances as to require its restitution to prevent inequity and unjust enrichment. And it may be that there has been a complete failure of consideration, but it was not paid to any officer of the Court,

nor under any order of Court. Were it is in the hands of an officer of the Court, in custodia legis, or had it been paid in response to an order of the Court, the control of the Court over its officers and over its orders would be sufficient to enable it to direct the final disposition of the fund in accordance with the equities of the case.

But this money is not in the hands of an officer of the Court. The Court had nothing to do with the payment to the County Treasurer. The situation results from the voluntary act of the defendants. After the payment, the fact was brought to the attention of the court, not for the purpose of obtaining an order of restitution, but for the purpose of obtaining an approval of the payment and an order of dismissal of the foreclosure action, to which defendants claimed they were entitled because of the payment.

No pleading of any sort has been filed at any time alleging a cause of action based on the payment and praying for judgment on such cause of action. There was and is nothing on file to which the Treasurer could demur or plead. No such issue has ever been made. The question is, whether under such circumstances the court had jurisdiction to make the order appealed from, which in fact and law purports to be a judgment for money against the Treasurer. We are of the opinion that the Court lacked such jurisdiction. It should be noted that it appears from the language of Judge Orr that he had some doubt on the subject and that may account for its exclusion from the journal entry that was made at the time.

In I Freeman on Judgments, 5th Ed., at pages 677 and 678, it is said:

"But it is not enough that the Court's power may be found broad enough in the abstract to cover the class of litigation to which the case in question belongs. Mere possession of power to act in respect to a specific subject matter is of no consequence unless that power is properly invoked. For jurisdiction of the subject matter of a particular case is something more than the constitutional or statutory power to entertain cases of the general class to which the one in hand belongs; it is that power called into activity, not by the court of its own motion for that would ordinarily be insufficient, but by some act of the suitor concerned and in some mode recognized by law.

"A court has no power to render judgment in favor of one as plaintiff if he has never commenced any action or pro-

ceeding calling for its action, nor has it, as a general rule, power to give judgment respecting a matter not submitted to it for decision, though such judgment is pronounced in an action involving other matters which have been submitted to it for decision and over which it has jurisdiction. There must be some appropriate application invoking the judicial power of the court in respect to the matter sought to be litigated, such as the filing of a petition, complaint or other proper pleading, for it is in this manner that the court's power over the subject matter is invoked."

And at pages 737, 738 and 739:

"In some instances courts have undertaken to decide questions not involved in the suit or action before them and to grant relief therein; and their judgments have been assailed for that reason, and to the extent to which they departed from the matters embraced within the record they have been denied effect. A court is limited in its determination to the matters properly before it. Ordinarily it has no authority to pass upon questions not involved and in respect to which its jurisdiction has not been invoked. For courts cannot ex mero motu set themselves in motion, nor have they power to decide questions except such as are presented by the parties in their pleadings. What is decided within the issues is coram judice; anything beyond is void, unless the parties voluntarily try an issue outside the pleadings. A judgment outside the issues is not a mere irregularity, but is extrajudicial and invalid."

See, also: 41 Am. Jur., 289, and **23 O. Jur., 559.**

It is said in the 4th paragraph of the syllabus to **Spoors v. Coen, 44 Oh St, 497,** that: "The judgment of a court upon a subject of litigation within its jurisdiction, but not brought before it by any statement or claim of the parties is null and void, and may be collaterally impeached." This pronouncement of the Supreme Court has been cited with approval by it in **Grant v. Village of Hyde Park, 67 Oh St, 166 at 175, Jewett v. Feldheiser, 68 Oh St, 523, at 530, Russell v. Fourth Nat'l Bank, 102 Oh St, 248, at 261,** and perhaps elsewhere, and has been consistently followed by the lower courts.

At the time Judge Orr handed down his opinion and direction, the jurisdiction of the Court to order restitution had not been invoked in any manner. His action was coram non judice because of that fact. Later, when the order appealed from was entered, the jurisdiction of the court was invoked,

not to secure an adjudication of the rights of the parties at that time, but solely to secure a journalization of an adjudication already made by Judge Orr. Judge Kramer assumed to do nothing more. There was no hearing upon the merits at that time. No matter how it is considered, the action of the court was beyond its jurisdiction upon the state of the record. To conclude the county treasurer under such circumstances would be lacking in due process of law.

For these reasons, we are of the opinion that the court erred in entering the judgment or order appealed from.

The judgment is reversed and the cause remanded for further proceedings according to law.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.